FILED

2022 Jul-22  PM 03:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **HENRY MURRY, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  2:20-cv-00721-ACA** |
| | ) | |
| **WALMART STORES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Henry Murry, Jr. filed this suit against Defendant Wal-Mart Stores East, LP ("Walmart"), alleging various claims relating to his employment at Walmart.  (Doc. 33 at 25, 35).  The only claims remaining are that Walmart discriminated against Mr. Henry based on his age and/or race by failing to promote him, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132 ("ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII"), and the Alabama Age Discrimination in Employment Act ("AADEA"), Ala. Code § 25-1-29.

Before the court is Walmart's motion for summary judgment. (Doc. 75).  The court declines to apply the equitable doctrine of judicial estoppel to dismiss Mr. Murry's claims but **WILL GRANT** the motion and **WILL ENTER SUMMARY JUDGMENT** in Walmart's favor and against Mr. Murry because

Mr. Murry failed to timely exhaust his administrative remedies for his Title VII claim and he has not created a genuine dispute of material fact on the merits of his claims.

## I.    BACKGROUND

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

Mr. Murry is not new to employment litigation or to bankruptcy.  In 1997, represented by counsel, Mr. Murry filed for Chapter 7 bankruptcy.  *In re Murry*, case no. 97-br-07644-BGC7 (Bank. N.D. Ala.).  In 2011, again represented by counsel, he filed for Chapter 13 bankruptcy.  *In re Murry*, case no. 11-br-05389-TBB13 (Bank. N.D. Ala.).

In 2013, Mr. Murry filed two employment discrimination lawsuits in the Northern District of Alabama, one *pro se* and one with the assistance of counsel. *Murry v. Family Dollar Stores*, case no. 2:13-cv-01865-RDP (N.D. Ala.); *Murry v. Ross Stores Inc. 1132*, case no. 2:13-cv-00392-KOB (N.D. Ala.).  In 2015 and 2016, he filed two more *pro se* employment discrimination lawsuits in the Northern District of Alabama.  *Murry v. Variety Stores, Inc.*, case no. 2:16-cv-00733-RDP (N.D. Ala.); *Murry v. Dollar Gen. Corp.*, case no. 2:15-cv-02044-MHH (N.D. Ala.).

On October 31, 2018, Mr. Murry filed for Chapter 13 bankruptcy a second time.  (Doc. 76-1 at 2).  At the time he was employed by Walmart, where he had worked from 1980 to 2008 and then from 2016 to 2020 (Doc. 76-4 at 8–9, 35; doc. 76-5 at 1 ¶ 3).

Mr. Murry was represented by attorneys in his bankruptcy proceeding.  (Doc. 76-1).  His attorneys had him sign a document stating that they had advised him "if, at any time during [his] Chapter 13 Bankruptcy, [he] should become eligible to receive money or proceeds from a lawsuit, . . . [he] must notify [the law firm] immediately."  (Doc. 79 at 6).

Mr. Murry verified under penalty of perjury that his bankruptcy petition was true.  (Doc. 76-1 at 14).  Schedule A/B to the petition, which lists the debtor's property, asks whether the debtor has any "[c]laims against third parties, whether or not [he had] filed a lawsuit or made a demand for payment."  (*Id.* at 22).  The question provides "employment disputes" as an example of this type of claim.  (*Id.*).  Mr. Murry answered "no."  (*Id.*).

Two months or so after he filed his petition for bankruptcy, Mr. Murry, who is Black, applied for a promotion to co-manager at a Walmart store.  (Doc. 76-4 at 3, 15; doc. 33 at 35).  At the time he was 59 years old.  (*Id.*).  Walmart's promotion process involves several telephone interviews, followed by a "store tour" with all of the applicants who had made it that far.  (Doc. 76-4 at 57–58; *see also* doc. 76-5 at

2 ¶ 6).  The store tour is a kind of practical test in which candidates show their skills and the evaluators assess their performance on competency ratings in three specific areas.  (Doc. 76-5 at 2–3 ¶¶ 11–13).

Mr. Murry and another Walmart employee named Carey Franklin were both selected to do the store tour, which occurred on January 25, 2019.[1]  (Doc. 76-4 at 57).  Mr. Franklin is a white male who was in his mid-40s at the time.  (Doc. 33 at 35).  After the store tour, Walmart asked Mr. Murry and Mr. Franklin to prepare presentations and action plans showing how they would respond to a business case scenario.  (Doc. 76-5 at 3 ¶ 15).  The assessors rated Mr. Franklin more highly than Mr. Murry on both the store tour and the business case scenario.  (*Id.* at 3 ¶ 14, 3 ¶ 16; *see also id.* at 9–11).  They unanimously selected Mr. Franklin for the position. (*Id.* at 4 ¶ 19).  On January 30, 2019, Walmart offered the position to Mr. Franklin. (Doc. 76-5 at 7).

On February 8, 2019, the bankruptcy court confirmed Mr. Murry's amended Chapter 13 plan.  (Doc. 76-1 at 85).  In late February or early March 2019—

---

[1] Mr. Murry's sworn EEOC charge attested that the "final interview" for the promotion "was in March 2019."  (Doc. 33 at 35).  However, at his deposition Mr. Murry testified that he was unsure when the store tour occurred and agreed that Walmart's records would be accurate.  (Doc. 76-4 at 15, 44).  Walmart submitted an affidavit from Tricia Spencer, the "People Operations Lead" at the store where Mr. Murry's store tour occurred.  (Doc. 76-5).  Ms. Spencer attests that the store tour occurred on January 25, 2019, although the evidence she relies on does not provide a date for the tour.  (*Id.* at 2 ¶ 9; *see id.* at 6).  Nevertheless, the court accepts Walmart's evidence about the specific date because the store tour must have occurred before Walmart offered Mr. Franklin the promotion on January 30, 2019.  (*See id.* at 7).

approximately a month after the store tour occurred on January 25—Walmart informed Mr. Murry that he had not received the promotion. (Doc. 76-4 at 15–16). On September 19, 2019, he filed an Equal Employment Opportunity Commission ("EEOC") charge alleging that Walmart discriminated against him based on his race and age when it declined to promote him. (Doc. 33 at 35).

In December 2019, the trustee in Mr. Murry's bankruptcy case moved the bankruptcy court to increase Mr. Murry's monthly payments and the court granted that motion. (Doc. 76-1 at 5). Four months later, in April 2020, Mr. Murry moved to suspend plan payments, a motion that the bankruptcy court granted in part. (Doc. 76-1 at 7); *see In re Murry*, case no. 18-br-04447-DSC13, Doc. 53 (Bankr. N.D. Ala. May 19, 2020).

On May 21, 2020, Mr. Murry, proceeding *pro se*, filed this action alleging that Walmart violated various employment statutes for various reasons. (Doc. 1). Over the next year, he amended his complaint three times and responded to Walmart's motion to dismiss his third amended complaint. (*See* docs. 13, 15, 33, 35, 42). Mr. Murry's operative complaint seeks $1.3 million in lost wages and potential earnings. (Doc. 33 at 24).

Back in the bankruptcy court, Mr. Murry moved in July 2021 to extend the plan term and reduce payments. (Doc. 76-1 at 7). He also filed an amended Schedule I setting out his income and an amended Schedule J setting out his

expenses, but not an amended Schedule A/B (where the question about claims against third parties can be found).  (Doc. 76-1 at 87–94).

On January 10, 2022, the parties filed a joint status report.  (Doc. 56).  After setting out the information the parties agreed should be included, Walmart added a section notifying the court for the first time that Mr. Murry was in Chapter 13 bankruptcy and stating that Walmart was "evaluating the impact of the bankruptcy filing on this case and the appropriate action, as Mr. Murry could be judicially estopped from pursuing this lawsuit or, at a minimum, recovering monetary damages."  (Doc. 56 at 2–3).  Walmart stated that it had emailed Mr. Murry to ask about including this information in the joint status report, but Mr. Murry had not responded.  (*Id.* at 2).  On the same day it filed the joint status report, Walmart filed a joint motion for an extension of discovery, which the court granted.  (Docs. 55, 57).  Over a week later, on January 18, 2022, Mr. Murry filed a motion for an extension of discovery, stating that he had been hospitalized.  (Doc. 58).  The court denied Mr. Murry's motion on the ground that it had already granted the joint motion for an extension.  (Doc. 59).

In February 2022, Walmart filed a motion for a protective order in which it stated that it was preparing a motion to dismiss the case based on judicial estoppel.  (Doc. 60 at 1).  On March 7, 2022, Walmart moved for summary judgment, or in the alternative to disallow monetary damages, based on judicial estoppel.  (Doc. 62; *see*

doc. 63 at 1–2).  In this motion, Walmart argued explicitly for the first time that Mr. Murry's failure to amend his Schedule A/B in the bankruptcy case judicially estops him from bringing this suit or recovering monetary damages.  (*Id.*).

Mr. Murry's response to Walmart's motion for summary judgment includes an affidavit, sworn under penalty of perjury, in which he attests that his bankruptcy lawyers had asked him to disclose if he became "eligible" to receive money from a lawsuit, but that he had not known he needed to disclose pending legal claims because he had not received any money from this lawsuit.  (Doc. 64 at 2; *see also id.* at 3).  He also swears that he was unaware he needed to amend his bankruptcy petition if he filed a lawsuit after the bankruptcy petition.  (*Id.*).  Mr. Murry's affidavit further attests that he notified his attorneys of this lawsuit on March 16, 2022 and that the bankruptcy court was aware of the lawsuit.  (*Id.*).

On April 5, 2022, Mr. Murry's bankruptcy attorney filed in the bankruptcy court an amended Schedule A/B.  (Doc. 76-1 at 96–104).  It discloses his "[p]ending EEOC claim" and this lawsuit.  (*Id.* at 102).  The bankruptcy court has taken no action since that time.  *See In re Murry*, case no. 18-br-04447-DSC13 (Bankr. N.D. Ala.).

## II.  DISCUSSION

Walmart moves for summary judgment on three grounds: (1) Mr. Murry's failure to disclose this lawsuit in his bankruptcy case judicially estops him from

pursuing the case; (2) Mr. Murry untimely filed his EEOC charge, barring this lawsuit; and (3) Walmart had a legitimate, non-discriminatory reason for promoting Mr. Franklin and Mr. Murry cannot present any evidence of pretext. (Doc. 77 at 15–34). The court rejects the equitable estoppel defense but agrees with Walmart that Mr. Murry failed to timely exhaust his administrative remedies and that he cannot prevail on the merits of his claims.

1. Judicial Estoppel

Under the equitable doctrine of judicial estoppel, the court has discretion to dismiss a plaintiff's claims "when a two-part test is satisfied: the plaintiff (1) took a position under oath in the bankruptcy proceeding that was inconsistent with the plaintiff's pursuit of the civil lawsuit and (2) intended to make a mockery of the judicial system." *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017) (en banc). There is no doubt that Mr. Murry took a position under oath in the bankruptcy proceeding that was inconsistent with his pursuit of this lawsuit: he failed to amend his bankruptcy petition to disclose his claims against Walmart when the claims arose, when he filed the EEOC charge, or when he filed this lawsuit. *See Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 644 (11th Cir. 2019) ("Under the law of this circuit, the duty to amend applies to Chapter 13 petitioners even after confirmation of the petitioner's plan . . . . By failing to disclose a pending district

8

court claim to the bankruptcy court, a plaintiff is thus deemed to be taking inconsistent positions.").

The question is whether Mr. Murry intended to make a mockery of the judicial system by failing to disclose his claims against Walmart. *See Slater*, 871 F.3d at 1180. In making that determination, the court must "look to all the facts and circumstances of the particular case." *Id.* at 1185. The court may "consider any fact or factor it deems relevant to the intent inquiry," but the Eleventh Circuit has specified some factors that may be particularly helpful where the inconsistency arises from an omission in bankruptcy disclosures:

> [T]he plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy attorney about the civil claims before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which he was party, and any findings or actions by the bankruptcy court after the omission was discovered.

*Id.* at 1185 & n.9. The court may not infer the requisite intent based only on the failure to disclose a civil claim, *id.* at 1185, but the court is not required to accept the plaintiff's explanation for the omission, *Weakley v. Eagle Logistics*, 894 F.3d 1244, 1247 (11th Cir. 2018).

Walmart contends that Mr. Murry made a mockery of the judicial system because: (1) he learned of his claims against Walmart within four months after filing his bankruptcy petition; (2) he filed other motions in the bankruptcy court relating

to his plan payments but failed to disclose this lawsuit, which he considers to be worth $1.3 million; (3) he has filed multiple other lawsuits and has declared bankruptcy twice before; (4) he is represented by counsel in his bankruptcy proceeding; and (5) Walmart notified him "prior to January 10, 2021" that he had not disclosed this lawsuit but he waited until March 2022 to amend his bankruptcy disclosures.  (Doc. 77 at 21–27).

As an initial matter, there is no evidence to support Walmart's assertion that it notified Mr. Murry of his failure to disclose the lawsuit "prior to January 10, 2021."  (*See* doc. 77 at 24).  Walmart provides no record citation to support this assertion and the court's own review of the record comes up short.  The earliest mention the court can find of Mr. Murry's bankruptcy case is in the January 10, 2022 joint status report in which Walmart notified the court of Mr. Murry's pending bankruptcy case and stated that it was evaluating a potential judicial estoppel defense.  (Doc. 56 at 2–3).

In the joint status report, Walmart stated that it emailed Mr. Murry about the bankruptcy and potential judicial estoppel but that he had not responded.  (Doc. 56 at 2).  Eight days after Walmart filed the joint status report, Mr. Murry filed a motion indicating that he had been hospitalized.  (Doc. 58).  Mr. Murry's motion sought relief that this court had already granted based on a motion filed by Walmart along

with the joint status report, indicating that Mr. Murry may not have seen Walmart's addition to the joint status report.  (*See id.*).

Walmart's next mention of judicial estoppel came in its motion for a protective order, but the motion for a protective order, naturally, contains no substantive argument about judicial estoppel or the import of the bankruptcy omission.  (Doc. 60).  The first document in which Walmart made any substantive argument about judicial estoppel was its motion for summary judgment, which it filed on March 7, 2022.  (Doc. 62).  Mr. Murry responded to that motion with a declaration, signed on March 18, attesting that he had not realized he needed to disclose the pending lawsuit but that he had notified his bankruptcy attorneys two days earlier about the lawsuit.  (Doc. 69 at 2).  He also explained that, based on a form his bankruptcy attorneys had him sign, he had believed that he needed to disclose only money that he was "eligible" to receive, but he had not yet received any money from this lawsuit.  (*Id.* at 2–3).  The court credits this explanation because, although Mr. Murry is a frequent litigant, he is not a sophisticated one.[2]

---

[2] Walmart contends that Mr. Murry sought mediation after learning about his bankruptcy omission, showing that he was pursuing a settlement that he would keep secret from the bankruptcy court. (Doc. 77 at 24).  This appears to be based on Mr. Murry's position, taken in the joint status report, that he believed mediation would be useful in resolving this case. (Doc. 56 at 1).  Walmart's contention requires the court to accept that Mr. Murry received and understood Walmart's proposed addition to the joint status report, which it says it sent him "prior to January 10, 202[2]." (*Id.*; *see also* doc. 56 at 1–2).  Given his hospitalization, the court is not convinced that Mr. Murry did receive the proposed addition when Walmart sent it, nor is the court convinced that Mr. Murry's desire for mediation necessarily shows that he intended to keep any potential settlement secret from the bankruptcy court.

Mr. Murry has frequently proceeded *pro se* in his employment lawsuits and, when proceeding *pro se*, has not found any success. *See Murry v. Variety Stores, Inc.*, case no. 2:16-cv-00733-RDP, doc. 15 (N.D. Ala. Dec. 12, 2016) (dismissed for failure to prosecute); *Murry v. Dollar Gen. Corp.*, case no. 2:15-cv-02044-MHH, doc. 13 (N.D. Ala. June 13, 2016) (dismissed for failure to prosecute); *Murry v. Family Dollar Stores*, case no. 2:13-cv-01865-RDP, doc. 22 (N.D. Ala. June 18, 2014) (dismissed for failure to prosecute and failure to state a claim). Moreover, his filings in this court do not show sophistication in the legal arena. And although Walmart had referenced judicial estoppel and Mr. Murry's bankruptcy proceeding in several filings in this case, Walmart's motion for summary judgment was the first time Walmart expressly set out what judicial estoppel is and where Mr. Murry's omission from his bankruptcy case occurred.

Based on the evidence before the court, the court finds that, until Walmart filed its motion for summary judgment on March 7, Mr. Murry did not understand the requirement that he disclose the pending lawsuit. Once Walmart explained the specific nature of the omission and its import, Mr. Murry took nine days to inform his bankruptcy attorneys about this lawsuit, and they filed the amended Schedule A/B nineteen days later. Moreover, the amendment to Schedule A/B has not prompted any action from the bankruptcy court, such as a sanction or a requirement

that Mr. Murry amend his payment plan.  The court declines to bar Mr. Murry's claims based on judicial estoppel.

Walmart argues in the alternative that even if the court does not apply judicial estoppel to dismiss Mr. Murry's claims in their entirety, the court should disallow any monetary recovery.  (Doc. 77 at 27).  Walmart's only support for this request are two unpublished and non-binding district court opinions, which are in any event factually distinguishable from this case.  (*See id.*).  Moreover, to the extent Mr. Murry's claims could succeed on the merits, application of judicial estoppel to disallow any monetary recovery would harm his creditors before it harmed him.  *See, e.g.*, *Slater*, 871 F.3d at 1179 (explaining that a Chapter 13 debtor must pay his debts from his future income or earnings); *id.* at 1186 (discussing the potential for judicial estoppel being "a windfall [for the civil defendant] at the expense of innocent creditors"); *id.* at 1188 (same).

2.  Untimely EEOC Charge

Walmart contends that Mr. Murry failed to exhaust his administrative remedies for his Title VII claim by filing a timely EEOC charge.  (Doc. 77 at 28).

A plaintiff seeking to file a claim under Title VII must first exhaust his administrative remedies, beginning by filing a timely charge of discrimination with the EEOC.  *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001); *see* 42 U.S.C. § 2000e-5(e)(1).  In a state like Alabama, which does not have an EEOC-

like administrative agency, the plaintiff must file his EEOC charge within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 421 F.3d 1169, 1178 & n.13 (11th Cir. 2005), superseded in part on other grounds by statute, Pub. L. No. 111-2, § 3. An employer's failure to promote an employee is a "discrete act" of discrimination for purposes of the 180-day time limit. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). "[T]he time for filing an EEOC charge begins to run when the employee receives unequivocal notice of the adverse employment decision." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1100 (11th Cir. 1996).

Mr. Murry filed his EEOC charge on September 19, 2019. (Doc. 33 at 35). Accordingly, any claims arising before March 23, 2019 are time-barred. *See* 42 U.S.C. § 2000e-5(e)(1). Walmart made its allegedly discriminatory decision to hire Mr. Franklin instead of Mr. Murry on January 30, 2019 (doc. 76-4 at 57; doc. 76-5 at 7), but it is not entirely clear when Mr. Murry learned of the promotion decision. He testified that he learned of the decision about a month after the store tour, which occurred on January 25, 2019 (doc. 76-5 2 ¶ 9), but he could not give a specific date (*see* doc. 76-4 at 15–16). However, approximately a month after the store tour would have been late February or early March—well before March 23, 2019. Thus, even construing the facts in Mr. Murry's favor, his EEOC charge was untimely and he did not properly exhaust his administrative remedies. The court therefore **WILL**

**GRANT** Walmart's motion to dismiss Mr. Murry's Title VII claim for failure to administratively exhaust it.

3. Merits

Even if Mr. Murry did exhaust his administrative remedies, Walmart contends in the alternative that Mr. Murry cannot prevail on the claims of race and age discrimination he brings under Title VII and the ADEA because Walmart had legitimate non-discriminatory reasons not to promote Mr. Murry and Mr. Murry failed to show these reasons were pretextual. (Doc. 77 at 31–32). Walmart also argues that because Mr. Murry's ADEA claim fails, so does its AADEA claim. (*Id.* at 3 n.1).

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). The ADEA prohibits employers from discharging an employee who is at least 40 years of age "because of" that employee's age. 29 U.S.C. §§ 623(a)(1), 631(a). In the absence of direct evidence, courts analyze claims of race and age discrimination using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008); *Damon v. Fleming Supermarkets of Fla., Inc*., 196 F.3d 1354, 1358 (11th Cir. 1999); *see also Pennington v. City of Huntsville*, 261 F.3d 1262, 1269 (11th Cir. 2001) ("[W]e

typically apply legal standards developed in Title VII and ADEA cases interchangeably.").  Under that framework, the plaintiff must first establish a prima facie case of discrimination.  *McCann*, 526 F.3d at 1373.  If he can do that, the employer must proffer a legitimate, nondiscriminatory reason for its employment decision.  *Id.*  Once the employer has provided a legitimate, non-discriminatory reason, the burden returns to the plaintiff to show that the proffered reason was pretext for discrimination.  *Id*.  To do so, the plaintiff must present evidence that the proffered reason was false and that discrimination was the real reason.  *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006).

Walmart does not dispute that Mr. Murry has carried his initial burden of making out a prima facie case of age and race discrimination.  (*See* doc. 77 at 29–32).  Instead, it proffers its legitimate, non-discriminatory reason for failing to promote Mr. Murry: it chose the candidate who performed better at the store tour and in the business case assessment.  (*Id.* at 31).  Walmart supports this proffer with the affidavit of the store's People Operations Lead as well as the evaluation performed by the assessors.  (Doc. 76-5 at 3 ¶ 14, 3 ¶ 16; *see also id.* at 9–11).  This suffices to meet Walmart's burden, shifting the burden back to Mr. Murry to show pretext.  *McCann*, 526 F.3d at 1373.

Mr. Murry cannot carry his burden.  He admitted during his deposition that he has no evidence of pretext for age discrimination, nor does the record provide any

such evidence.  (Doc. 76-4 at 68–69).  As for race discrimination, Mr. Murry relies entirely on the fact that the store where he was applying for a promotion was located in an area with a predominantly white population.  (*Id.* at 68–69).  That evidence alone cannot overcome Walmart's proffered legitimate, non-discriminatory reason for selecting Mr. Franklin over Mr. Murry.  Accordingly, the court **WILL GRANT** Walmart's motion for summary judgment in its favor on Mr. Murry's age and race discrimination claims.

As a final matter, Mr. Murry's complaint listed, as one of the statutes under which he is traveling, the AADEA, Ala. Code § 25-1-29.  (Doc. 33 at 27).  The court agrees with Walmart that, because the ADEA claim fails on the merits, so too does the AADEA claim.  (*See* doc. 77 at 3 n.1); *see* Ala. Code § 25-1-29 ("[T]he . . . defenses . . . under this article shall be the same as those authorized by the federal Age Discrimination in Employment Act except that a plaintiff shall not be required to pursue any administrative action or remedy prior to filing suit under this article.").  Accordingly, the court also **WILL GRANT** Walmart's motion for summary judgment in its favor on the AADEA claim.

## III.   CONCLUSION

For the reasons above, the court **WILL GRANT** Walmart's motion for summary judgment and **WILL ENTER SUMMARY JUDGMENT** in favor of

Walmart and against Mr. Murry on Mr. Murry's claims of race and age discrimination arising from Walmart's failure to promote him.

The court will enter a separate final judgment consistent with this opinion.

**DONE** and **ORDERED** this July 22, 2022.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE